### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| ALLEN WOOLF<br>1127 North Main Street<br>Amherst, Ohio, 44001<br><br>    On behalf of himself and all<br>    others similarly-situated<br><br>                      Plaintiff,<br>      v.<br><br>REVOLUTION TRUCKING, LLC<br>257 Main Street, Suite 103<br>Wadsworth, Ohio 44281<br><br>    **Please serve also:**<br>    c/o James Adams, Statutory Agent<br>    269 Acadia Lane<br>    Wadsworth, Ohio, 44281<br><br>    -and-<br><br>JAMES ADAMS<br>4194 Scenic Way,<br>Medina, Ohio, 44256<br><br>    -and-<br><br>BRIAN WATSON<br>486 Farr Avenue<br>Wadsworth, Ohio, 44281<br><br>                      Defendants | CASE NO.:<br><br>JUDGE<br><br><br>**COLLECTIVE ACTION<br>COMPLAINT FOR VIOLATIONS<br>OF THE FAIR LABOR STANDARDS<br>ACT**<br><br>**(Jury Demand Endorsed Herein)** |

### INTRODUCTION.

1. As part of a company-wide scheme to avoid paying overtime, Defendants Revolution Trucking, LLC ("Revolution"); its principal, James Adams, and Chief Operating Officer Brian Watson misclassified Revolution's Cargo Van Drivers as "independent contractors" and paid them solely by the mile to haul good across the country. Accordingly, Defendant's conduct violated the Fair Labor Standards Act ("FLSA"), 29 U.S. Code § 207. On behalf of

1

himself and all other similarly situated employees, Plaintiff Allen Woolf brings this collective action for the recovery of unpaid overtime pursuant to 29 U.S.C. § 216(b). Members of the collective action are hereinafter referred to as the "FLSA Collective Class Members."

## PARTIES.

2. Revolution is a domestic limited liability company that is headquartered in Wadsworth, Ohio.

3. Woolf is an individual residing in Lorain County, Ohio. Woolf performed work for Revolution within the last three years for which he was not paid the overtime wages guaranteed by the FLSA. Woolf's signed consent to sue Revolution, individually and on behalf of the putative collective, will be supplemented to this Complaint within the next fourteen days.

4. Adams is the President of Revolution and is a co-owner of the business.

5. Watson is the Chief Operating Officer and is a co-owner of the business.

6. The FLSA Collective Class Members are all current and former drivers who operated vehicles belonging to Revolution that weighed 10,000 pounds or less; who worked for Revolution for any period of time during the three-year period immediately preceding the filing of this Complaint to present; and were denied overtime despite working greater than 40 hours per week.

## PERSONAL JURISDICTION.

7. Revolution is incorporated in Ohio; hires citizens of the state of Ohio, contracts with companies in Ohio; and owns or rents property in Ohio. As such, the exercise of personal jurisdiction over Revolution comports with due process.

8. This cause of action arose from or relates to the contacts of Revolution with Ohio residents, thereby conferring specific jurisdiction over Revolution.

## SUBJECT MATTER JURISDICTION AND VENUE.

9. This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

10. Venue is proper in this District because Revolution does a sizeable portion of their business in this District, and the wrongs herein alleged occurred in this District.

## COVERAGE.

11. At all times referenced herein, Revolution was an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r) and formed a single enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise at all times hereinafter mentioned had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that enterprise had an annual gross volume of sales made or business done of not less than $500,000.00.

12. At all times material to the Complaint, Woolf and those similarly-situated directly participated in the actual movement of things in interstate commerce and were thus covered by the overtime provisions of the FLSA.

13. At all times referenced herein, Adams and Watson supervised and/or controlled the employment of Woolf and those similarly-situated with Revolution, controlled the day-to-day operations Revolution, to include controlling its compensation policies and practices, and acted directly or indirectly in the interest of Revolution in relation to its employees, and were employers within the meaning of section 3(d) of the FLSA

## FACTUAL ALLEGATIONS.

14. Revolution provides offers brokered shipping and trucking services throughout the United States, Canada, and Mexico.

15. During the three years immediately preceding the filing of this Complaint, Revolution hired numerous persons like Woolf as "Independent Contractors" to operate vans with a Gross Vehicle Weight of 10,000 pounds or less.

16. Examples of the Cargo Vans are pictured on Revolution's Google Profile Page and Facebook.com Profile:





17. In June 2008, Congress passed a Technical Corrections Act ("TCA") amending the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA-LU") to provide that drivers, drivers' helpers, loaders and mechanics of vehicles weighing 10,000 lbs. or less who perform tasks that affect the safety of vehicles operating in interstate commerce are encompassed within the maximum hours provisions of 29 U.S.C. §207 and are thus entitled to overtime when they work greater than 40 hours in a single week.

18. In *Acosta v. Off Duty Police Servs., Inc.*, 915 F.3d 1050, 1052 (6th Cir. 2019), the Sixth Circuit Court of Appeals explained that the economic reality test considers six factors which can weigh either towards employment status or independent contractor status. Those factors are (1) the permanency of the relationship between the parties; (2) the degree of skill required for the rendering of the services; (3) the worker's investment in equipment or materials for the task; (4) the worker's opportunity for profit or loss, depending upon his skill; (5) the

5

degree of the alleged employer's right to control the manner in which the work is performed and 6) whether the service rendered is an integral part of the alleged employer's business. None of these factors is dispositive and are instead weighed "'with an eye toward the ultimate question [the worker's] economic dependence on or independence from' the alleged employer."

19. Woolf is a current employee of Revolution.

20. Woolf was hired by Defendants as a Cargo Van Driver in or around September of 2021.

21. Like other Cargo Van Drivers, Defendants improperly classified Woolf as an Independent Contractor.

22. At all times referenced herein, Revolution's Cargo Van Drivers, including Woolf, were hired on an at-will basis, on a permanent basis, and without a fixed term of engagement.

23. No special skills, or even a Commercial Driver License, is needed to perform the Cargo Van Driver position.

24. At all times referenced herein, Cargo Van Drivers like Woolf made no investments into Revolution.

25. At all times referenced herein, Cargo Van Drivers like Woolf did not own or solicit the routes they drove or the Revolution customers they provided service for.

26. At all times referenced herein, Revolution owned and maintained the Cargo Vans the Cargo Van Drivers like Woolf operated and paid for all fuel.

27. At all times referenced herein, Cargo Van Drivers like Woolf could not affect their pay through managerial skill and thus had no opportunity for profit or loss. See *Acosta*, 915 F.3d at 1059 (quoting *Schultz v. Capital Int'l Sec., Inc*., 466 F.3d 298, 309 (4th Cir. 2006) ("While the decision to accept or reject work is a type of managerial action, the relevant question is whether workers could increase profits through managerial skill… It requires little skill to

determine whether one is available at a certain day and time or whether inclement weather or some other…. Decreased pay from working fewer hours does not qualify as a loss.")

28. At all times referenced herein, Defendants controlled the terms and conditions of Woolf and other Cargo Van Driver's employment; required them to follow its rules and policies; dictated which routes had to be completed and the time frame in which they had to be completed by; controlled when Cargo Van Drivers were required to drive and when they could rest; and maintained the power to discipline drivers for violations of its rules.

29. For example, in response to a recent complaint on Google Reviews by a motorist that one of Revolution's Cargo Van Driver had been driving recklessly, Revolution responded:

> Rick, we apologize and sorry to hear about this incident. This does not represent Revolution Trucking AT ALL. We have spoken to the driver of this truck 1005 and **conducted a safety audit with him**. This driver has a clean record and **this is his first strike.** Our mission is to insure the safety and well being of everyone on the road. If you would like to discuss in more detail, please give us a call at 330-975-4145. Thank you for the feedback.[1]

30. At all times referenced herein, Cargo Van Drivers like Woolf were an integral part of Revolution's business of delivery, hauling, and transporting.

31. Cargo Van Drivers, including Woolf, were in reality employees, and not "Independent Contractor(s)."

32. To the extent that Woolf and other Cargo Van Drivers were not independent contractors but employees, they are and were entitled to overtime pay for all hours they worked over 40 in a given week because they operated motor vehicles weighing 10,000 or less in interstate commerce.

33. As all times referenced herein, Defendants paid Cargo Van Drivers like Woolf on a per mile basis.

---

[1] Exhibit 1 (**Emphasis** added).

7

34. As all times referenced herein, Defendants failed to record the hours worked by Cargo Van Drivers like Woolf.

35. As all times referenced herein, Defendants frequently required Woolf and other Cargo Van Drivers to work greater than 40 hours a week; in fact, a job posting for a Cargo Van Driver position recently posted by Revolution stated that Cargo Van Drivers are expected to work "more than 40 hours per week."[2]

36. At all times referenced herein, Woolf and other Cargo Van Drivers were expected to meet tight delivery and pickup deadlines, such that they were only permitted to sleep for less than eight (8) hours within a 24-hour period in their vans while completing routes ("Sleep Time").

37. Because Woolf and other Cargo Van Drivers were paid by the mile, they were not compensated for their Sleep Time.

38. At all times referenced herein, Woolf and those similarly situated often had to wait for extend periods of time for their vans to loaded and unloaded ("Loading Time").

39. Because Woolf and other Cargo Van Drivers were paid by the mile, they were not compensated for Loading Time.

40. Upon information and belief, Adams and Watson made the decision to implement the unlawful independent contractor and pay by the mile schemes utilized by Revolution without the assistance of legal counsel to determine whether the schemes complied with the requirements of the FLSA.

41. Upon information and belief, Adams and Watson made the decision to implement the unlawful independent contractor and pay by the mile schemes utilized by Revolution without consulting FLSA regulations or Department of Labor opinions or publications to determine whether the schemes complied with the requirements of the FLSA.

---

[2] Exhibit 2.

## FLSA COLLECTIVE ACTION ALLEGATIONS.

42. Woolf brings this as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of himself and all similarly-situated individuals who are part of the following class:

   > All current and former drivers who operated vehicles belonging to Revolution with a Gross Vehicle Weight of 10,000 pounds or less during any week in the three-year period immediately preceding the filing of this Complaint to present, and who were paid on a per mile, per route, or per delivery or pickup basis.

43. Collective Action treatment of Woolf's FLSA claim is appropriate because Woolf and the FLSA Collective Class Members have been subjected to the same common business practice referenced in ¶¶ 14-41 of the foregoing Complaint, *supra*, and the success of their claims depends on the resolution of common issues of law and fact, including, *inter alia*, whether Defendants' company-wide practices failed to properly compensate the FLSA Collective Class Members for all hours worked.

## COUNT I: VIOLATION OF THE FAIR LABOR STANDARDS ACT.

44. Woolf re-alleges and incorporates by reference the allegations set forth in paragraphs 1-44, above.

45. The FLSA requires each covered employer, such as Revolution, to compensate all non-exempt employees at a rate of not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a work week.

46. Woolf and those similarly-situated were not exempt from the right to receive overtime pay under the FLSA during their employment with Revolution.

47. Woolf and those similarly-situated are entitled to be paid overtime compensation for all overtime hours they worked.

48. At all times relevant to this Complaint, Defendants had a policy and practice of failing to pay overtime to its Cargo Van Drivers by paying them solely by the mile and by not paying them for all compensable hours worked.

9

49. Defendants either recklessly failed to investigate whether their failure to pay Woolf and those similarly-situated overtime violated the Federal Wage Laws of the United States; intentionally misled Woolf and those similarly-situated to believe that they were "independent contractors" and that Revolution had no obligation to pay them overtime, and/or Revolution concocted a scheme pursuant to which it deprived Woolf and those similarly-situated of the overtime pay to which they were entitled.

50. Revolution's failure and refusal to pay Woolf and those similarly-situated the proper overtime wage for all overtime hours worked was willful, intentional, and not in good faith.

51. Woolf and those similarly situated are entitled to all legal and equitable remedies available for violations of the FLSA, including, but not limited to, back pay, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and litigation costs, and other compensation pursuant to the FLSA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Allen Woolf respectfully request relief against Defendants, joint and severally, as set forth below:

a. Designating this action as a collective action on behalf of Woolf and the Collective he represents pursuant to the Fair Labor Standards Act, issuing notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in Collective apprising them of the pendency of this action, which will permit them to assert timely FLSA claims in this action by filing individual consent to sue forms pursuant to 29 U.S.C. § 216(b), and equitably tolling the statute of limitations from the date of filing this Complaint until the expiration of the deadline for filing consent to sue forms pursuant to 29 U.S.C. § 216(b);

b. Designating Woolf as the representative for the Collective;

c. Issuing a declaratory judgment that the practices complained of herein are unlawful under the FLSA, 29 U.S.C. §§ 201 *et seq.*.;

d. Awarding Woolf and the Collective unpaid unpaid overtime wages and an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

e. Issuing an injunction prohibiting Defendants from continued unlawful practices, policies and patterns set forth herein;

10

f. Awarding pre-judgment and post-judgment interest as provided by law;

g. Awarding reasonable attorneys' fees and costs; and

h. Awarding such other and further relief that this Court deems appropriate.

        Respectfully submitted,

        */s/ Chris P. Wido*
        Chris P. Wido (0090441)
        **SPITZ, THE EMPLOYEE'S LAW FIRM**
        25825 Chagrin Boulevard, Suite 200
        Beachwood, Ohio 44122
        Phone: (216) 291-4744
        Fax:    (216) 291-5744
        Email: chris.wido@spitzlawfirm.com

        *Attorney for Plaintiff Allen Woolf*

## **JURY DEMAND**

Plaintiff Allen Woolf demand a trial by jury by the maximum number of jurors permitted.

        */s/ Chris P. Wido*
        Chris P. Wido (0090441)
        **SPITZ, THE EMPLOYEE'S LAW FIRM**

EXHIBIT 1

# Revolution Trucking, LLC

257 Main St, Wadsworth, OH

**4.4** ★★★★★  7 reviews

Write a review

**Sort by**

Most relevant | Newest | Highest | Lowest

---

**Rick Joslin**
1 review · 1 photo

★☆☆☆☆  9 months ago

The driver is this truck 1005 ran me off the road on I76 in Ohio on Sunday June 27 while passing me on the right doing over 75 miles an hour. He moved into the left lane forcing me to break and drive on the berm of the road.  I hope all your driver's are not this reckless.  Put then you do promote great delivery.



👍 Like

**Response from the owner** 9 months ago
Rick, we apologize and sorry to hear about this incident. This does not represent Revolution Trucking AT ALL. We have spoken to the driver of this truck 1005 and conducted a safety audit with him. This driver has a clean record and this is his first strike. Our mission is to insure the safety and well being of everyone on the road. If you would like to discuss in more detail, please give us a call at 330-975-4145. Thank you for the feedback.

---

**Denise Brenneman**
4 reviews

★★★★★  a year ago

**Positive:** Professionalism, Quality, Responsiveness, Value

Very pleasant experience, their communication and responsiveness is absolutely amazing.  Kevin was the contact I dealt with and he handled everything very well and made my life a LOT easier.  Overall I will

EXHIBIT 2

What will I drive?

Our fleet is composed of late model RAM Promaster 3500 box Cargo Vans with the latest technology and safety features. All trucks are equipped with bunks and would meet sleeping expectations while on the road. All trucks have power inverters and other amenities to accommodate your living conditions.

What do I need to get started?

A proper legal driver's license (no CDL required)

A safe driving record (less than 2 violations in 5 years and no traffic violations the last two 2 years)

Transportation or trucking experience preferred

A simple background check and drug screen will help ensure we build the safest and most reliable team in the industry!

About Revolution

With more than 100 years of combined supply-chain, logistics, and transportation experience, Revolution provides clients creative solutions, competitive rates, and world-class customer service.

Schedule

More than 40 hours per week



257 Main Street, Wadsworth, OH 44273         Get directions